*In re* CHYNA B., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. James Bryant, Respondent-Appellant).

Fourth District   No. 4—01—1159

Opinion filed June 17, 2002.

Robert G. Kirchner, of Lerner & Kirchner, of Champaign, for appellant.

John C. Piland, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and Kathy Shepard, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Respondent father, James Bryant, appeals from the orders of the Champaign County circuit court finding his daughter, Chyna B. (born July 24, 2001), neglected, making her a ward of the court, and placing her in the custody and guardianship of the Illinois Department of Children and Family Services (DCFS). Respondent mother, Nicole Wood, is not a party to this appeal. The issues on appeal are whether (1) this appeal is moot because the proceedings against respondent father were terminated with custody and guardianship returned to him; (2) the finding that the minor was neglected was against the manifest weight of the evidence; (3) the trial court's findings in support of the removal of custody from respondent father were against the manifest weight of the evidence; and (4) the dispositional order resulted from an abuse of discretion in that it improperly contained directives to respondent father that were wholly unrelated to the basis for the finding of neglect. We affirm.

■ On April 14, 2002, this court issued a rule to show cause for re-

spondent father to demonstrate why this appeal should not be dismissed as moot because, on April 2, 2002, the proceedings against respondent father were terminated with custody and guardianship of the minor returned to him. On May 2, 2002, respondent father filed a response to the rule to show cause, and the rule and the response thereto were taken with the case. Because of the possible collateral legal consequences to respondent father in the context of juvenile proceedings (see 705 ILCS 405/2—18(3) (West 2000) (prior neglect adjudication is admissible in subsequent proceedings); 705 ILCS 405/2—33 (West 2000) (a supplemental petition may be filed reinstating wardship and reopening the case)), we agree with respondent father that this appeal should not be dismissed for mootness (see *In re Christenberry,* 69 Ill. App. 3d 565, 566-67, 387 N.E.2d 923, 925 (1979)).

On September 4, 2001, the State filed a petition for wardship alleging Chyna B. to be neglected on grounds that her environment was injurious to her welfare when she resided with respondent mother because (1) she was exposed to substance abuse and (2) respondent mother had failed to correct the conditions that resulted in a prior adjudication of unfitness to exercise guardianship and/or custody of the minor's sibling. 705 ILCS 405/2—3(1)(b) (West 2000). Following the adjudicatory hearing conducted October 29, 2001, the trial court found count II proved, but not count I. On November 3, 2001, the court entered a written adjudicatory order finding Chyna B. a neglected minor.

Respondent first challenges the finding of neglect because it was based on the actions of only the other parent. Respondent father relies on *In re S.S.*, 313 Ill. App. 3d 121, 728 N.E.2d 1165 (2000).

■ A minor is neglected if her environment is injurious to her welfare. 705 ILCS 405/2—3(1)(b) (West 2000). Respondent father does not dispute that respondent mother created an injurious environment for Chyna B. Instead, he argues that a finding of neglect as to respondent mother should not be attributable to him, as no evidence suggested his neglect of the child. We disagree and find *S.S.* distinguishable.

In this case, the evidence presented at the adjudicatory hearing established that, in a juvenile proceeding involving an older child of respondent mother, the primary issue was respondent mother's substance abuse. As to Chyna B., DCFS child protection investigator Sheree Foley responded to the August 29, 2001, hot-line report of lack of supervision and risk of harm to Chyna B. The allegation was that respondent mother had fallen asleep or passed out while feeding the child so that the child almost fell out of her arms. Respondent mother informed Foley that she had been "clean" for the prior six months, al-

though acknowledging that she had tested positive for cocaine in March 2001 and throughout her pregnancy. The child was born clean of drugs. Respondent mother had been required to do "drops," *i.e.,* tests, because she was on probation. Respondent father told Foley that respondent mother had a long history of substance abuse and had been using drugs throughout the time they had been living together and caring for the child. Respondent father found the child in the arms of respondent mother, with the child screaming and almost falling out of her arms. He told Foley that respondent mother appeared to be unconscious. Foley learned that respondent father was an active, participating parent in the child's life.

Respondent father testified that, at the time of the adjudicatory hearing, he lived alone. He started going out with respondent mother about three years before, but they had an on-and-off relationship. Respondent mother told him of the pregnancy in November 2000. Respondent mother then came to stay with him for a short while and subsequently went into a rehabilitation center in Peoria for her substance abuse. In December 2000, respondent mother told him she had substance-abuse problems with cocaine. Respondent mother's rehabilitation was terminated in mid-January. Respondent mother told respondent father that she had refused to follow a directive and was discharged. In February 2001, respondent father went to Delaware to assist in caring for his ill father. He did not live with respondent mother for the entire duration of the pregnancy, but he was living with her when the child was born on July 24, 2001. He continued to live with her until the end of August 2001. After respondent mother and the child came home from the hospital, respondent father was concerned that respondent mother was having a problem with prescription drugs. One of the painkillers she was using was methadone. He noticed respondent mother was very lethargic, her mind was not sharp, and her speech was slurred on occasion. Respondent mother seemed to be "okay" most of the time that she cared for Chyna B., but most of the time he took care of the child. He had suspicions about leaving Chyna B. alone with respondent mother which later became concerns. At 1:30 a.m. on August 27, 2001, he awoke to the baby's screams. This was not crying, but a very disturbed noise. When he got to the living room, he observed respondent mother in a chair. In spite of the child's screaming, respondent mother was not awake. Respondent mother was not holding the child in a position to properly support the child's head. When the baby started to slip, respondent father ran over to grab the baby. Respondent father testified that, when he was out of the house for work, "others" were brought in to help respondent mother with the child. He usually fed and cared for the child

before going to work. Respondent father had gone with respondent mother to the first appointment with the pediatrician regarding her high-risk pregnancy because respondent mother had been carrying twins and had miscarried one because of cocaine abuse during the pregnancy.

Registered nurse Suzanne Eades testified that she was employed by the Champaign-Urbana Public Health District and was a friend of respondent mother. On random occasions, Eades would visit the respondents' home three to four times per week for one to six hours per visit. As a registered nurse, Eades was a mandated reporter and observed nothing that caused her to feel a need to report. She was present when respondent mother flushed some methadone down the toilet because she was concerned that she may be becoming addicted to methadone. That occurred sometime in August 2001. The testimony of Eades, and all other witnesses who had observed respondent father with Chyna B., indicated that respondent father was a quite capable and caring parent.

■ The trial court's finding of neglect will not be overturned on appeal unless it is contrary to the manifest weight of the evidence. *In re A.P.*, 179 Ill. 2d 184, 204, 688 N.E.2d 642, 652 (1997). The reviewing court does not reassess witness credibility or reweigh the evidence and will not overturn the trial court's findings merely because it would have reached a different conclusion. See *In re B.J.*, 316 Ill. App. 3d 193, 199, 735 N.E.2d 1058, 1064 (2000).

In *S.S.*, the determination of neglect focused on the past neglect and abuse of an older sibling by the father; the older sibling had died. The court found that (1) no evidence showed that the mother disregarded a DCFS protection plan concerning the older sibling; (2) domestic-violence counseling had resolved the prior domestic-violence issues; (3) no evidence showed anything the mother did or failed to do in connection with the sibling's death that created a substantial risk to S.S.; (4) the parents no longer lived together; and (5) the mother was not allowing unauthorized visits by the father with S.S. or leaving S.S. unattended, and if the custody was returned, would not allow the father to visit without being present. *In re S.S.*, 313 Ill. App. 3d at 128-31, 728 N.E.2d at 1171-73. The court concluded that there was no reason to find that the mother neglected S.S. *In re S.S.*, 313 Ill. App. 3d at 132-33, 728 N.E.2d at 1173.

■ By comparison, in this case, respondent father was aware of respondent mother's prior cocaine problem, understood that she used cocaine during the pregnancy, knew respondent mother was having problems with prescribed medication, and was suspicious about respondent mother's abilities to care for Chyna B. Nevertheless, respon-

dent father continued to allow respondent mother to care for the child without his supervision and presence. The fact that respondent father arrived in the nick of time to save Chyna B. from serious injury on one occasion does not remove respondent father's responsibility for creating the injurious environment. It was unnecessary for the trial court to find that Chyna B. was neglected on the basis of any action or inaction by respondent father. Chyna B. fit the definition of "any minor under 18 years of age whose environment is injurious to his or her welfare" (705 ILCS 405/2—3(1)(b) (West 2000)) by reason of respondent mother's actions and respondent father's inactions in failing to correct the conditions of which he was aware. A minor child may be found neglected even though the primary fault for creating the injurious environment rests with one parent. The finding of neglect in this case is not against the manifest weight of the evidence.

◼ Respondent father further argues that, even if the adjudication of neglect is affirmed, the dispositional order should be reversed. Respondent father challenges the sufficiency of the evidence to support the trial court's finding that he was unfit and unable to care for the child.

The trial court, upon determining and putting in writing the factual basis, may commit the minor to DCFS if it determines the parent is unable, for some reason other than financial circumstances alone, to care for, protect, train, or discipline the minor and that the health, safety, and best interests of the minor will be jeopardized if the minor remains in the custody of the parent. 705 ILCS 405/2—27(1) (West 2000). In this case, the trial court found respondent father unfit and unable to care for Chyna B. However, a review of the trial court's findings in its dispositional order, findings rendered orally and in writing at prior hearings, and the entire record of these proceedings does not show respondent father to be unfit.

At the dispositional hearing conducted November 26, 2001, the trial court considered the dispositional report, as corrected by the parties, and all evidence and stipulations adduced in the earlier hearings. No witnesses testified at the dispositional hearing.

The dispositional report prepared by DCFS on November 20, 2001, stated that respondent father was frequently sent out of town for his job. During the busiest season for respondent father's work, he was not always able to make weekly visits and had to reschedule twice. More recently, respondent father was able to visit more frequently, and he informed DCFS that when the busy season was over he would be able to see Chyna B. every day. Nevertheless, although the trial court authorized overnight visits, respondent father could not take advantage of that privilege due to his work schedule and his plans for

the Thanksgiving holiday. Indeed, at the shelter-care hearing, respondent father had asked the trial court to take custody of Chyna B. for the next two or three months because his job required him to be out of town.

These facts support the trial court's finding that respondent father was unable, for reasons other than financial circumstances alone, to care for the minor. The grounds are stated in the disjunctive in the statute and any one of them will support the trial court's removal of custody from respondent father. 705 ILCS 405/2—27(1) (West 2000). The trial court did not find that respondent father was unwilling to care for the child.

At the dispositional hearing, the question is not necessarily one of unfitness of the parent but rather what is in the best interest of the child. The evidence of respondent father's inability to take care of Chyna B. during his job's busy season supports a finding that it was in her best interests to remove custody from him. The "unanswered questions" of the trial court about respondent father's ability to parent were relevant to a determination of whether, for the protection of the child, custody should initially be removed from respondent father pending a determination of the answers to those questions. Therefore, the trial court's finding that removal of custody from respondent father was in Chyna B.'s best interests was not against the manifest weight of the evidence, and its removal of custody from respondent father was not an abuse of discretion. See *In re J.J.*, 327 Ill. App. 3d 70, 77, 761 N.E.2d 1249, 1255 (2001) (child's best interests are superior to all other factors even if the parent is not found to be unfit).

■ Finally, respondent father contends that some conditions included in the dispositional order were improper. The dispositional order required respondent father to submit to an alcohol- and drug-usage evaluation and to successfully complete any recommended counseling, rehabilitation, or treatment. He was also required to complete a parenting education and instruction course and demonstrate appropriate parenting skills, including supervision, limit setting, discipline, and interaction with the minor. The order also requires respondent father to attend all school conferences.

The trial court's order need not be limited to the situation that caused the minor's removal or the conditions existing at that time because the conditions triggering removal are not the only conditions a parent needs to address to achieve reunification. See *In re C.N.*, 196 Ill. 2d 181, 213-14, 752 N.E.2d 1030, 1048-49 (2001). Serious conditions may come to light following removal, and a relatively minor incident could be symptomatic of more profound problems. *C.N.*, 196 Ill. 2d at 214, 752 N.E.2d at 1049. Although the conditions of a

dispositional order need not relate solely to the grounds for adjudication of wardship, there must be some basis in the evidence for them, and the propriety of the conditions of the dispositional order are reviewed on an abuse of discretion standard. *In re J.H.*, 212 Ill. App. 3d 22, 28-31, 570 N.E.2d 689, 692-94 (1991).

Substance abuse was the underlying cause for the injurious environment in this case. The respondent father was aware of the substance abuse by the mother and the possible harm to the child. The trial court's inclusion of a requirement that respondent father submit to an alcohol- and drug-usage evaluation was not an abuse of discretion.

In addition, the inclusion of the condition that respondent father attend school conferences was not an abuse of discretion. Although Chyna B. was too young to attend school at the time the dispositional order was entered, the trial court was not obligated to anticipate that DCFS or juvenile court involvement might discontinue prior to her becoming involved in a preschool, kindergarten, or schooling in a higher grade.

Last, the precaution taken by the court to require respondent father to complete a parenting class was not an abuse of discretion in this case. The evidence is clear that respondent father's job interfered at times with his responsibilities and duties as a father. Caring for the child was the primary issue. A parenting class could help respondent father in learning to relate to the child now and as she grows up. This directive fits within the best-interests-of-the-child parameters.

The judgment of the circuit court of Champaign County is affirmed.

Affirmed.

STEIGMANN and APPLETON, JJ., concur.